AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 23 2025

MITCHELL R. ELFERS
CLERK OF COURT

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Max Aaron Garcia and Aaron Joshua Brown | ) | Case No. 25-831mJ |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **February 19, 2025** in the county of **Dona Ana** in the District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. Section 1324(a)(1)(A)(v)(i) | Conspire to violate 8 U.S.C. Section 1324 - all subsections - did knowingly, intentionally, and unlawfully, conspire, combine, confederate, and agree with other persons known and unknown, to commit offenses against the United States, namely: to transport, move, and attempt to transport and move such alien within the United States by means of transportation and otherwise. |

This criminal complaint is based on these facts:
See Affidavit, attached and incorporated herein, by reference.

☑ Continued on the attached sheet.

_____
Complainant's signature

Gerardo Zepeda, U.S. Border Patrol Agent
Printed name and title

Sworn to before me and signed in my presence. VIA TELEPHONE

Date: 4/23/25

_____
Judge's signature

City and state: Las Cruces, New Mexico

Gregory J. Fouratt, U.S. Magistrate Judge
Printed name and title

United States of America

v.

Max Aaron Garcia and Aaron Joshua Brown

**AFFIDAVIT**

On February 19, 2025, a U.S. Border Patrol Agent was conducting surveillance from his unmarked government vehicle in front of the Santa Teresa, New Mexico Border Patrol Station.

At approximately 1709 hours, the agent observed sensor activations near Border Safety Initiative (BSI) marker 306, an area located approximately 20.65 miles west of the Santa Teresa, New Mexico Port of Entry. At approximately 1800 hours, the agent responded to the sensor activation in his assigned unmarked government vehicle. Upon arrival, he identified footprints belonging to three individuals walking north from the border fence at BSI marker 306 toward mile marker 128 on New Mexico Highway 9 (NM9). The agent relayed his observations and the direction of travel via service radio. Other agents assigned to All-Terrain Vehicles (ATVs) responded to his location to assist.

While traveling westbound on NM9, an ATV agent observed a white Chrysler 300 pulled over near mile marker 136 with its hood raised, appearing to have mechanical issues. The agent contacted El Paso Sector Radio to request a vehicle check. The check returned a match with no derogatory information. The agent then continued westbound toward BSI marker 306. Upon arrival, ATV agents began tracking the footprints northbound using their ATVs.

Meanwhile, another agent proceeded toward NM9, driving westbound. During his patrol, the agent observed the same white Chrysler 300, now stopped near mile marker 126 facing westbound, again with its hood raised. He passed the vehicle and continued toward mile marker 123. Upon reaching mile marker 123, he made a U-turn and drove eastbound on NM9, where he again observed the Chrysler 300, now near mile marker 128 facing eastbound, still with its hood raised. The agent reported his observations, and the vehicle's location over the service radio to other agents in the area before continuing eastbound.

Moments later, another agent positioned himself on NM9, near mile marker 124, in his assigned unmarked government vehicle, and observed the Chrysler 300 with two individuals standing outside the vehicle, near mile marker 128. The agent was utilizing a thermal image camera and observed that the two individuals persistently directed their gaze southward toward the desert and not at their vehicle.

ATV agents continued tracking the footprints northbound toward NM9 and eventually encountered three individuals attempting to conceal themselves behind mesquite brush, approximately 300 yards south of NM9 near mile marker 128. The agents questioned the individuals regarding their citizenship and nationality. All three subjects admitted to being Mexican nationals without legal documentation to be or remain in the United States.

ATV agents escorted the individuals northbound toward NM9 for transport. Upon reaching the highway, they observed the Chrysler 300 nearby and approached the vehicle. ATV agents noticed two individuals standing outside the vehicle with the hood open, appearing to inspect it for mechanical issues. Those individuals were later identified as Aaron Joshua Brown (Brown) and a mutual friend of Brown and Max Aaron Garcia (Garcia). Garcia was seated inside the vehicle.

An ATV agent approached the individuals, identified himself as a U.S. Border Patrol Agent, and inquired whether they needed assistance. Brown and the mutual friend stated they were experiencing mechanical problems with their vehicle. Given the presence of the three illegal aliens near the Chrysler 300 in a desolate area, the proximity to the international border, and the vehicle's location in a known alien smuggling corridor, agents elected to make an investigative stop with the individuals at the scene.

Upon questioning Brown regarding their presence at that location, Brown stated that they were driving around looking for a place to smoke and were experiencing vehicle issues. When agents informed him that three suspected illegal aliens were in their immediate vicinity and appeared to be approaching their location, Brown said, "I don't want to go to jail." Additionally, Brown and Garcia were unable to provide any form of identification which is a common tactic used by human smugglers attempting to conceal their identity from law enforcement.

Based on the totality of circumstances, including the indicators of a potential alien smuggling attempt, agents determined there was sufficient cause to detain Brown, Garcia, and the mutual friend. The three individuals were subsequently placed under arrest and transported to the Border Patrol station for further investigation.

Brown agreed to give a sworn statement without the presence of a lawyer and also gave consent to access the contents of his cellphone. During a sworn statement, Brown stated that he had spoken with Garcia approximately two days prior regarding a proposed trip. During the conversation, Garcia offered Brown $250.00 USD to drive him to a specified location. Brown stated that he did not know the reason for the trip, but agreed to drive Garcia to the location because he needed the money, and did not ask Garcia any questions about the trip.

Brown further stated that Garcia instructed him to meet Garcia at the mutual friend's residence, where Brown would pick up Garcia and then proceed to the location. When Brown arrived at the mutual friend's residence, Brown learned that the mutual friend would also be accompanying them. Garcia sent Brown the pinpoint location via Facebook Messenger. This desolate location was later determined to be within 1,000 feet of the area where Border Patrol Agents apprehended three illegal aliens.

Brown also stated that while en route to the location, his vehicle experienced mechanical issues, and he had to pull over multiple times to prevent his vehicle from overheating. Upon reaching the designated location sent by Garcia, Brown stated that Garcia rolled down the window and

whistled loudly into the desert. Garcia then shouted something in Spanish, which Brown could not understand because Brown does not speak Spanish.

Agents also obtained a search warrant to search Garcia's cellphone that he had on him at the time of his arrest, and during the search, Agents discovered several text communications through the WhatsApp application between Garcia and another individual (Co-Conspirator 1). In the messages, Garcia asked Co-Conspirator 1 whether Co-Conspirator 1's husband was still involved in the smuggling of "Pollos." I know, through training and experience, that the term "Pollo" is commonly used by alien smugglers to mean undocumented aliens. Co-Conspirator 1 then facilitated contact between Garcia and Co-Conspirator 2.

Co-Conspirator 2 sent Garcia a GPS location via WhatsApp designating where the smuggling operation was to take place—an isolated area near mile marker 128 on New Mexico Highway 9. Co-Conspirator 2 informed Garcia that three undocumented non-citizens were to be picked up at that location. Notably, this location is within 1,000 feet of where Border Patrol Agents ultimately encountered Garcia, Brown and the three illegal aliens. Garcia informed Co-Conspirator 2 that he would be in a white Chrysler 300. On the date of the encounter, Garcia was located seated in the front passenger seat of a white Chrysler 300 sedan. He also told Co-Conspirator 2 that the two individuals with him were willing to participate in the smuggling operation.

This affidavit is written for the sole purpose of establishing probable cause and does not contain every fact known to me concerning this investigation.

AUSA Mark Saltman reviewed and approved this criminal complaint against Garcia and Brown.

Gerardo Zepeda, Agent
U.S. Border Patrol

Subscribed to me telephonically, on this __23__ day of April 2025.

Gregory J. Fouratt, U.S. Magistrate Judge
District of New Mexico